# Exhibit 4

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| STATE OF CONNECTICUT;<br>STATE OF RHODE ISLAND; and<br>KATHERINE DYKES, Commissioner of the<br>Connecticut Department of Energy and Environmental<br>Protection,<br><br>       Plaintiffs,<br><br>   v.<br><br>UNITED STATES DEPARTMENT OF THE<br>INTERIOR; DOUGLAS BURGUM, Secretary of the<br>Interior, in his official capacity; BUREAU OF<br>OCEAN ENERGY MANAGEMENT; MATTHEW<br>GIACONA, Acting Director of Bureau of Ocean<br>Energy Management, in his official capacity;<br>BUREAU OF SAFETY AND ENVIRONMENTAL<br>ENFORCEMENT; and KENNETH STEVENS,<br>Principal Deputy Director of the Bureau of Safety and<br>Environmental Enforcement, in his official capacity,<br><br>       Defendants. | C.A. No. 1:25-cv-00439 |

**DECLARATION OF WILLIAM COX**

I, William Cox, pursuant to 28 U.S.C. § 1746, hereby declare:

1.      I am over the age of 18. I know the following facts based on my own personal knowledge, and if called upon to do so, would be competent to testify to the facts and circumstances set forth herein.

2.      I am Vice President of Business Development and Investments at the Rhode Island Commerce Corporation (RICC).

3.      RICC is a quasi-public agency that serves as the economic development agency for the state of Rhode Island.  RICC is a government and community resource to help businesses

relocate to and expand in Rhode Island, thereby having a positive economic impact on the state and its residents.

4.    My work at RICC focuses on the ocean economy industry, a large component of which consists of offshore wind projects, such as the Revolution Wind project. As part of this work, RICC attempts to maximize job and investment opportunities in Rhode Island from the offshore wind industry.

5.    I have worked at RICC since April 2022 and have been in my current position since April 2023.

6.    For the past several years, Rhode Island has focused on positioning itself as a maritime industrial leader. Thus far, the state has been a success story in attracting clean energy projects, such as Revolution Wind, to invest in the state. This has already led to significant corporate and infrastructural investment and development, including at the Port of Providence (ProvPort) and the Port of Davisville in North Kingstown.

7.    Because Rhode Island has established a unique maritime industrial base, we have also been able to attract talent from around the world to work in offshore wind and related industries. Rhode Island has worked hard to continue growing our ocean economy industry to attract even more investment and talent to the state.

8.    However, delays to the Revolution Wind project will lead to an exodus of this investment and talent related to this project, devastating our ocean economy, including ongoing and upcoming projects.

9.    The offshore wind companies that we attract to work in Rhode Island must invest a significant amount of capital upfront for any project. This is because the process of permitting (at the state and federal levels, often through several different agencies), impact assessments, and

construction often take years—all before the project can begin to operate, and thereby begin to recoup costs. Such large upfront investments mean that these companies are risk averse. They do not want to begin the initial years-long process without some certainty that the project will eventually be fully realized and operational.

10.     This means that the Stop Work Order issued by the Bureau of Ocean Energy Management (BOEM) will affect not just the Revolution Wind project itself, but will seriously deter other companies from investing in Rhode Island and bringing their business here. The reputation and trust we have grown as a leader in this industry will be quickly destroyed.

11.     Indeed, we have already started to see these effects. After the current federal administration indicated, including through Executive Orders, that it would reverse course on clean energy initiatives and related projects earlier this year, I quickly began to see foreign companies in the offshore wind industry and companies that are part of the offshore wind supply chain pulling back commitments in the state.

12.     For instance, the Cambridge Innovation Center (CIC) in Providence has served for the last several years as a soft-landing office for overseas companies that support offshore wind projects. This is where wind companies, based primarily in Europe, first set up physical offices as they initiate projects and set up contracts. As they gain traction in the region, they hire additional staff and invest in further projects.

13.     However, we have recently seen these companies start to withdraw from their leases at CIC and lay off staff. This is because, starting in January, some saw their projects being delayed or terminated entirely. Others were simply wary that additional opportunities in the industry would dry up. Delays in the Revolution Wind project will only serve to speed up this

withdrawal of investment from the state, as companies become more trepidatious of making any further financial commitments in Rhode Island.

14.     I have abundant examples of this in my own work at RICC. Prior to the Stop Work Order, I had meetings with developers and supply chain companies that were eager to work with RICC and invest in various offshore wind and related projects in Rhode Island. Since the Stop Work Order, however, these entities are no longer in contact.

15.     Moreover, delays to the Revolution Wind project also have direct effects on Rhode Island ports. As mentioned above, both ProvPort and the Port of Davisville rely on offshore wind companies to use space and services, especially Ørsted, which oversees the Revolution Wind project. For example, the offshore wind industry leases a significant portion of ProvPort, with Ørsted serving as the anchor, or master, lessee. The Port of Davisville, similarly, has a lease—with Ørsted supporting Operations and Maintenance, and long term jobs at the port.

16.     Additionally, RICC is currently seeking an anchor tenant to invest in and catalyze development in a port in East Providence. Prior to the Stop Work Order, we had developers interested in developing this port, performing services for future projects whose permits have now been revoked, and bringing further business to Rhode Island. However, because of the Stop Work Order, those developers are no longer interested in working with us.

17.     With the Revolution Wind project temporarily stopped, the use of these ports as expected, to sustain current business opportunities and create future investment opportunities, is in question. It will be extremely difficult to find comparable alternative uses for these port spaces and facilities, other than to support offshore wind projects.

18.     The loss of such business at these ports will not be contained to the offshore wind industry alone. Rather, this industry fuels a number of other businesses and their work in the

state. For instance, those working in marine science, ports, vessel maintenance and logistics (including shipping agents), importation-related services, and more will be affected and will likely have to scale back their work in the state if Revolution Wind is no longer an operating project. Even more common industries, such as utility services, garbage removal and food services, will also be affected. This offshore wind project supports an entire supply chain of companies providing well-paid jobs that will be hindered if it is further delayed or halted.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed in Providence, Rhode Island on September 16, 2025.

William Cox

Vice President, Business Development and Investments
Rhode Island Commerce Corporation